# Krebs, Receiver, Appellant, *v.* Oberrender.

*Corporations—Stock subscriptions—Payment in property—Evidence—Burden of proof—Acts of April 29, 1874, P. L. 73, and April 17, 1876, P. L. 30.*

1. In an action by the receiver of an insolvent corporation to recover for an alleged unpaid stock subscription on the ground that it had not been paid in cash, but in property, and that this manner of payment had not been set forth in the articles of association as required by the Act of April 17, 1876, P. L. 30, there can be no recovery, where it appears that the property was acquired by the corporation from the defendant and the stock certificate issued to him in payment several months after the certificate of incorporation was signed by him, where it does not appear that at the time the certificate of incorporation was signed it was known that the stock subscription would be paid for in property.

2. If the payment was made in property suitable for the purposes of the corporation at a just valuation and without fraud, it was a valid payment of which creditors could not complain.

3. A corporation, once it has been formed, and is actually being operated, may accept in payment of an original and unconditional stock certificate, its fair equivalent in property.

4. The burden of proof is upon the subscriber who has paid for his stock something else than cash, to show that the transaction was based upon a contract with the company, that it was fair, and that the property had been valued by those representing the corporation in good faith.

*Corporations—Increase of indebtedness—Debt in course of business—Act of February 9, 1901, P. L. 3.*

5. The term "increase of indebtedness," as used in the Act of February 9, 1901, P. L. 3, does not extend to a liability incurred in the usual course of business.

6. Such a question could not be raised in a suit to recover on an alleged unpaid stock subscription, where the subscriber claimed that he had paid for his stock in property, and accepted judgment notes of the company for an amount equivalent to the value of the property in excess of his stock subscription.

Argued April 10, 1922. Appeals, Nos. 154 and 155, Jan. T., 1922, by plaintiff, from judgments of C. P.

Luzerne Co., Jan. T., 1919, Nos. 94 and 95, for defendants n. o. v., in case of Frank P. Krebs, Receiver of the Motor Transit Co., Inc., v. J. C. Oberrender and S. S. Oberrender. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Assumpsit on stock subscriptions.    Before WOOD-WARD, J.

The opinion of the Supreme Court states the facts.

Verdicts for plaintiff.    Judgment for defendants n. o. v.    See 21 Luzerne Leg. Reg. 367.    Plaintiffs appealed.

*Error assigned* in both cases was entry of judgment for defendant n. o. v., quoting record.

*Rush Trescott,* with him *John O. Ulrich* and *Roger J. Dever,* for appellant.—Defendant's subscription being unconditional and an original subscription by signing the application for the charter should be paid in cash: Com. v. Mineral Fountain Co., 20 Phila. 405; Nippenose Mfg. Co. v. Staden, 68 Pa. 256; Bole v. Fulton, 233 Pa. 609; Bole v. Murray, 233 Pa. 589; Altoona Milk Co. v. Armstrong, 38 Pa. Superior Ct. 350.

The judgment notes constituted an unlawful increase of indebtedness: Gloucester Ferry Co. v. Penna., 114 U. S. 203; Columbia Conduit Co. v. Com., 90 Pa. 307.

*John H. Bigelow,* with him *John R. Sharpless,* for appellee.—The capital stock of a corporation need not be paid in cash: Cooke v. Marshall, 191 Pa. 315; Shannon v. Stevenson, 173 Pa. 419.

A contribution of physical property adapted to corporate purposes satisfies and discharges an original subscription, except as to the prerequisite payment of 10% in cash: Patterson v. Franklin, 176 Pa. 612; Hooven Mercantile Co. v. Mining Co., 193 Pa. 28; Golden's App., 110 Pa. 581; Bole v. Murray, 233 Pa. 589.

OPINION BY MR. JUSTICE SCHAFFER, May 8, 1922:

These two cases were tried together in the court below; they resulted in verdicts for plaintiff; subsequently the court entered judgments for defendants non obstante veredicto from which plaintiff has appealed.

The actions were in assumpsit, by a receiver in equity, to recover alleged unpaid stock subscriptions, due to the corporation which the court had placed in his charge. The facts giving rise to the controversy to be determined are substantially undisputed.

By articles of association, dated February 9, 1914, defendants and one other, associated themselves together and applied to the Governor of Pennsylvania for letters patent for a corporation to be called The Motor Transit Company, Incorporated, the corporation to be formed "for the purpose of establishing, maintaining and operating automobile bus or stage lines" between certain places named. The paper recited that S. S. Oberrender had subscribed for 25 shares of the capital stock, J. C. Oberrender 24 shares and the third person one share. The capital stock was fixed at $5,000. It was certified that ten per centum of the capital stock had been paid to the treasurer in cash. It is admitted that it was so paid. Application was made to the Public Service Commission for approval of the incorporation, its assent was obtained April 8, 1914, and letters patent creating the corporation were issued April 16, 1914.

In order to carry on its business and accomplish the purpose for which it was formed, the company was required to have motor vehicles, and on May 11, 1914, it purchased from defendants, at a price admitted to be fair, certain automobiles and motor trucks belonging to them, and, in payment therefor, issued to them shares of the company's capital stock—to S. S. Oberrender 24 shares and to J. C. Oberrender 23 shares—and in addition it executed and delivered to them judgment notes for the difference between the par value of the shares and the price of the cars. The transaction was evidenced by

bills of sale duly executed by defendants to the company; the cars were delivered to it and used by it in its business for a considerable period of time.

The company having become insolvent, handed back to defendants by action of its board of directors, the cars which they had sold to it, and they turned over to the company the certificates of stock and the judgment notes given to them in payment. When the plaintiff was appointed receiver of the company, subsequent to this last transaction, instead of beginning appropriate proceedings to have the motor cars returned to the company, he instituted these suits, to recover what he alleges to be the amount unpaid on the defendants' stock subscriptions, claiming the sales and delivery of the cars to the company in the first instance, and the payment of part of the admittedly fair price for them in stock of the company, did not discharge defendants' liability to pay their stock subscriptions in cash. His proposition, as he puts it in his statement of the question involved, is, "Must an original, unqualified subscription to the capital stock of a corporation be paid in cash, or may it be paid in personal property, there being nothing in the certificate of incorporation to indicate that it is to be paid otherwise than in cash?" The answer to the question thus put is to be found in our cases as well as in textbook authorities.

In passing, it may clarify the proposition to observe, as did the learned court below in its opinion entering judgments for defendants, that there is no fraud, for defendants paid for their stock in property, at a just valuation. Appellant bases his contention on the Act of April 17, 1876, P. L. 30, amending the 17th section of the General Corporation Act of April 29, 1874, P. L. 73, 1 Stewart's Purdon, Pennsylvania Statutes, page 803, section 5649, which provides that corporations "may take such real and personal estate, mineral rights, patent rights, and other property, as is necessary for the purposes of its organization and business and issue stock to the amount of the value thereof, in payment thereof, and

the stock so issued shall be declared and taken to be full paid stock, and not liable to any further calls or assessments; and in the charter and certificates and statements to be made by the subscribers and officers of the corporation, such stock shall not be stated or certified as having been issued for cash paid into the company, but shall be stated or certified in this respect according to the fact......No such corporation shall issue either bonds or stock, except for money, labor done or money or property actually received......" In construing this act in Big Spring Electric Co. v. Kitzmiller, 268 Pa. 34, 38, we said: "The constitutional and statutory provisions referred to were designed to prevent unscrupulous persons from fraudulently issuing and placing on the market bonds or stock not fairly representing money or property received by the corporation......In purchasing property for corporate purposes the transaction must be bona fide and not a mere device to evade the law." The contention of appellant is, that, because in the certificate of incorporation, signed by the appellees, it was not stated that the stock was to be paid for in property, and because no statement was filed showing payment of the subscription had been so made, it had to be paid in cash, in order to discharge defendants' liability, and not having been so paid, defendants still owe and are liable for the amount of their subscriptions above the 10% admittedly paid in cash. This loses sight of the fact that the certificate of incorporation was signed on February 9, 1914, and the transaction of the sale of the automobiles did not take place until May 11, 1914. For anything that appears, at the time the certificate was signed and filed, it was not known that the motor cars necessary to carry on the company's business would be paid for in stock. The usual and ordinary method of obtaining letters patent for a corporation is, as was here done, by making application after 10% of the capital stock subscribed has been paid to the treasurer in cash, and where a transaction of the payment of the balance of subscrip-

tion in property has not been consummated when the articles of association are signed, it is difficult to see how a certificate could be filed that the balance of the subscription has been paid in property. Where property is taken for payment in stock at a valuation made in good faith at the time of the transaction, such valuation is binding on the creditors of the corporation: Coit v. North Carolina Gold Amal. Co., 15 Phila. 496; affirmed in Coit v. North Carolina Gold Amal. Co., 119 U. S. 343. "An issue of stock for property is one which finds support, not only in the decisions, but in the daily transactions of corporations, and the law does not compel the corporation and the subscriber to go through the useless form of a payment by a corporation to the subscriber of the value of the property and immediate repayment of the same money by the subscriber to the corporation on his subscription": Cooke v. Marshall, 191 Pa. 315, 319; Cook on Stock and Stockholders, section 18. "There is no inherent incapacity of a corporation to purchase property and pay for it by stock instead of money......In addition to its inherent powers to make such contract, the corporation had express statutory recognition of its authority;......a corporation in process of formation and not yet in actual operation may have no other mode of getting the necessary equipment to commence business": Shannon v. Stevenson, 173 Pa. 419.

In Bole v. Murray, 233 Pa. 589, which was a suit by a receiver against a subscriber to stock of a corporation prior to its incorporation and where the defense was that the stock had been paid for in property, it appeared that the issuing of the certificate to the defendant, was not pursuant to any corporate action, and there was no evidence that the directors of the corporation ever passed judgment on the value of the property defendant claimed to have turned over in payment or what the actual value of the property was; in the case in hand, all these elements appear. The stock was issued in pursuance of corporate action, the directors passed judgment on the

value of the property, and it is admitted that the corporation, in acquiring it, received full value for the shares which it issued; moreover, in the last cited case, the trial court found the property acquired was of little utility to the company; here, the property was essential to the carrying on of the corporation's business. In that case, we said: "In all such cases where an original subscriber to stock claims to have paid a subscription in something else than money, the burden is on him to show a contract with the corporation permitting it, and the further burden is on him of showing that the transaction was fair and that the property turned over in payment had been valued by those representing the corporation in good faith." Defendants' proofs in the case at bar met all the requirements here laid down to show payment. In the Bole Case, it was further said: "We may concede that a corporation, once it has been formed and is actually being operated, may accept in payment of an original and unconditioned stock certificate its fair equivalent value in property." 14 Corpus Juris, page 432, thus states the general rule: "In most jurisdictions, either by express statutory authority or by reason of the absence of a provision to the contrary, real or personal property may be received by a corporation in payment for its capital stock, so as to make it full paid stock, even as against creditors, whether the stock is issued to subscribers therefor or sold, provided the property is such as the corporation may lawfully acquire and hold for carrying out the objects and purposes for which it was organized."

Appellant's further contention, that the giving of the notes in part payment for the automobiles constituted an increase of the indebtedness in violation of the terms of the act of assembly, is without merit, and even if it could be sustained would be of no avail to appellant in this proceeding, which is a suit to recover on the alleged unpaid stock subscriptions.

The assignments of error are all overruled and the judgments are affirmed.