Farrante, Adr., Appellant, *v.* Orrico et al.

. Argued December 8, 1943. Before BALDRIGE, STADT-
FELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.
(KELLER, P. J., absent).

*R. C. Mauch,* of *Mauch & Goodman,* for appellant.

*Benjamin Nieman,* with him *John H. Diefenderfer,*
for appellee.

OPINION BY RENO, J., January 27, 1944:

In this sci. fa. sur mortgage, plaintiff undertook to
rebut the presumptions of payment arising from the
lapse of time, and the possession of the mortgage papers
by the mortgagor.

The mortgage was for $400, dated January 28, 1905,
payable one year after date, and was given by Michael-

angelo Orrico to Maria Vincenza Farrante. The sci. fa. issued December 22, 1941; the principal was then overdue almost thirty-five years, and interest was claimed only from July 28, 1908. The mortgagee died March 9, 1907, and Gustave Farrante, her administrator, is plaintiff. The mortgagor died February 15, 1940, and his executor, Pasquale O'Ricko, and his devisee, Angeline Tate, are the defendants. The jury returned a verdict for plaintiff. The court sustained defendants' motion for judgment n.o.v., and entered judgment for them. The plaintiff brought the case to this court.

The presumption of payment arising from lapse of time does not extinguish the debt nor, like the bar created by the statute of limitations, require a new promise or its equivalent to revive it: *Grenet's Est.*, 332 Pa. 111, 2 A. 2d 707. "This presumption, in the nature of a receipt written by the hand of time, may, however, be overcome by affirmative proof that the debt, as a matter of fact, has not been paid, and when the presumption is overcome the liability of the debtor continues": *Fidelity Title & Trust Co. v. Chapman*, 226 Pa. 312, 314, 75 A. 428. The presumption, nevertheless, is a strong one and is strengthened as time passes on: *Lefever's Est.*, 278 Pa. 196, 122 A. 273. Evidence to rebut it must be "clear and convincing, especially where suit is not brought until after the death of the debtor": *Sheafer v. Woodside*, 257 Pa. 276, 101 A. 753. "Moreover, although it has never been held that any lapse of time, however great, will render the presumption so conclusive that it may not be rebutted, it has been repeatedly held that where, as in the present case, there has been a lapse of more than thirty years, it is, in legal effect, so well nigh conclusive as to require the very clearest and most explicit kind of proof to dislodge it": *Frey's Est.*, 342 Pa. 351, 354, 21 A. 2d 23. "The facts and circumstances relied on to rebut the presumption must necessarily be within twenty years before

suit is brought": *Gregory v. Com.*, 121 Pa. 611, 622, 15 A. 452. "The burden of removing the presumption of payment was on plaintiff; whether the evidence was sufficient, where the question of credibility is not in issue, is for the court": *Bartram's Est.*, 282 Pa. 536, 539, 128 A. 511.

Concerning the presumption arising out of the fact that the mortgage papers were found in the possession of the mortgagor, it is enough to quote the opinion of Chief Justice SHAW in *Crocker v. Thompson*, 44 Mass. 224, 231, which was approved by our Supreme Court in *Clymer v. Groff*, 220 Pa. 580, 584, 69 A. 1119: "In general it may be admitted that the production by the mortgagor, or those claiming under him of a note secured by mortgage, will raise a presumption, in the absence of all other proof, that it has been paid. But this is a presumption of fact, not of law, and will be rebutted by any other evidence. If the possession and production of the note can be satisfactorily accounted for upon any other hypothesis than that of the payment of it to the holder, it will rebut such presumption."

The mortgagor, Orrico, was a brother-in-law of the mortgagee, Mrs. Farrante. They lived in adjoining dwellings. Mrs. Farrante died in 1907 and her husband in 1908. They left six minor children. The Orricos took charge of the children. They maintained the home for them, purchased and cooked their food, put the smaller ones to bed, clothed them, secured work for them, took care of their earnings, and, generally, raised the family. The Orricos continued thus to provide for the children until they were able to carry their own burdens. Naturally, they had the run of the house. The E. P. Wilbur Trust Company, since closed and dissolved, was originally the administrator of Mrs. Farrante's estate. The mortgage was not mentioned in its first and final account as an asset.

The appellant mainly relied upon Orrico's alleged

admissions concerning the non-payment of the mortgage. Rose Anfuso testified that fifteen years before the trial she heard a conversation between her father and Orrico, while they were playing cards, in which the former said, "Stop being such a show-off [Orrico had been jingling coins in his pocket]; if you would pay those children the mortgage back which you owe them, you wouldn't be such a show-off," to which Orrico answered, "That's my business." Mrs. Jennie Martin testified that *thirty-one years before the trial,* when Orrico was visiting at her home and was again rattling money in his pocket, her father said to Orrico, "If you would pay the money you owe my nephews, you wouldn't have that much to show off on." Orrico made no reply to this statement.

These conversations have slight, if any, probative value. The fathers of these witnesses had no legal interest in the mortgage or the children. Orrico was under no duty to explain the transaction to them. He told one to mind his own business, and this admonition is supposed to be an evasion of the charge made against him and, therefore, an admission by acquiescence. In the second instance, his silence is said to give consent, even though that conversation dealt, not with the mortgage but with the nephews' money generally. Maybe one or both conversations might be taken as admissions by acquiescence, but they cannot rebut a presumption so strong which, as our cases hold, can be overcome only by clear and explicit proof. "The reason why this species of evidence is given, is because the party by his silence is supposed to acquiesce ...... That presupposes a declaration or proposition made to him, which he is bound either to deny or admit ...... It should always be received with caution, and never ought to be, unless the evidence is of direct declarations of that kind, which naturally calls for contradiction; some assertion made to the man, with respect to his right,

which, by his silence, he acquiesces in": *Moore v. Smith,* 14 S. & R. 388, 392. In the same case, Mr. Justice DUNCAN, referring to another conversation, made an observation which is pertinent here: "Of all evidence, loose, hasty conversation is entitled to the least weight. I do not know that in the present case, the conversation could have weighed more than a feather ......"

The mortgage was in the possession of appellees. It was found among Orrico's possessions after his death. One of the mortgagee's sons testified that when he was fourteen years old, three or four months after his mother's death, while his father was still alive, he saw Orrico take a red handkerchief out of a drawer in the Farrante house and take it away with him. The witness did not know whether there were any papers in the handkerchief. There is no other testimony that the mortgage papers were in the handkerchief, or for that matter, in Mrs. Farrante's house at her death. Upon this the jury was expected to base a finding that Orrico had stolen the mortgage, and thereby account for its presence among his possessions after his death. This fragment of testimony must be read in the light presented by appellant's whole case. President Judge IOBST aptly and tersely supplied the answer: "We are not justified to assume as a fact that the mortgage was in the red handkerchief when it was taken by Orrico. We cannot assume that this man Orrico was a dishonest man, trying to cheat and defraud his nephews and niece at their tender ages when he and his wife practically raised all of them, providing for their care and comfort when bereft of their parents, as testified to by Joseph Ferrante, and other witnesses called by the plaintiff."

We have carefully studied the entire record. Giving appellant the full benefit of all the facts proven in the case and all the inferences that may be legitimately drawn, we are obliged to conclude that appellant failed

to prove "non-payment by evidence of such quantity and quality as to leave no room for reasonable doubt as to that fact": *Frey's Est.*, supra, p. 356.

Judgment affirmed.