## Schmidt *v.* Paul, Appellant.

Argued March 31, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

reargument refused June 4, 1954.

*Sherman T. Rock,* with him *Theodore M. Burns, Jr.* and *Paul, Lawrence & Rock,* for appellants.

*Harry R. Levy,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 24, 1954:

The liquidating receiver of an insolvent corporation commenced this suit by a complaint in equity to recover the purchase price due on defendants' subscriptions to corporate shares of stock. The learned court below accurately pointed out that the question

"whether the burden of proof is upon the plaintiff or upon the defendants is all-important." It ruled that, since the subscribers had failed to show the transfer of the consideration to the corporation was fair and that the property turned over to the corporation was valued in good faith, they had not met the required burden of proof. The subscribers have appealed from the decree ordering them to pay an alleged unpaid balance on their stock subscriptions to the liquidating receiver, the plaintiff-appellee.

The court below found the following as the facts: The appellants, Ralph W. Paul and Blanche S. Paul, husband and wife, had been operating a partnership involving a lumber and building supply business. Herman D. Snyder and his son, H. Lawton Snyder, were likewise conducting a partnership involving the same type of business. On April 11, 1950, these partnerships were combined into a single corporation, the Mon Valley Lumber and Supply Company. The sole incorporators, directors, and stockholders of this corporation were Herman D. Snyder and his wife, Sara E. Snyder, and the two appellants. Each of the appellants subscribed for fifty-seven shares, $100 par value, of the corporation's capital stock. The stock certificates purported on their face to be fully paid and non-assessable.

Prior to the incorporation of the company the appellants had entered into an oral agreement with the Snyders providing for the payment of their subscriptions in undefined amounts of money and inventory. The minute book of the company contained the following notation concerning the first meeting of the directors held on May 10, 1950: " 'The amounts paid in by the subscribers for stock were as follows and the value of the property delivered by the subscribers in

part payment of their several subscriptions was set by the Directors as follows, to wit:

| | | |
|---|---|---|
| Ralph W. Paul | Cash | $700.00 |
| Blanche S. Paul | Cash | $700.00 |

Value of property delivered to the Corporation by Ralph W. Paul and Blanche S. Paul $10,000.00. . . .' " The appellants had neither paid any money nor delivered any property in payment for their subscriptions at the time of this *first* meeting. Ralph W. Paul had, however, made an inventory on April 15, 1950, four days after the incorporation, of all the lumber and supplies in the yard formerly belonging to the old partnership which the appellants intended to turn over to the corporation in part payment of their subscriptions. This inventory was appraised on May 15, 1950, five days after the first meeting of the Board of Directors, and valued at $10,853.24 in the presence of Herman D. Snyder who gave his oral assent to both the inventory and the valuation. The court below found as a fact that an unspecified amount of this inventory had been delivered to the corporation and that money payments aggregating $1,777.49 should be considered as credits to the purchase price of the appellants' subscriptions. These findings were made on the basis of the testimony and other evidence presented at the trial, but the books and records were found to be entirely inadequate for the purpose of determining whether or not the subscriptions had been paid.

On November 30, 1951, creditors of the Mon Valley Lumber and Supply Company petitioned for the appointment of a receiver *pendente lite*. The plaintiff was so appointed and subsequently, on December 14, 1951, was appointed liquidating receiver. The liquidating receiver brought the present action to recover the alleged purchase price due on the appellants' share subscriptions as above related.

The learned court below followed what it regarded as the proper interpretation of *Bole v. Murray*, 233 Pa. 589, 597, 82 A. 943. It was there said: ". . . where an original subscriber to stock claims to have paid a subscription in something else than money, the burden is on him to show a contract with the corporation permitting it, and the further burden is on him of showing that the transaction was fair and that the property turned over in payment had been valued by those representing the corporation in good faith. . . ." The court below, however, found that appellants had a contract to turn over property instead of money and that some property had been turned over to the corporation. But it was held that since the appellants had ". . . failed to show . . . that the transfer at an indeterminate time of an indefinite amount of property was fair . . ." and that since they had ". . . failed to prove that whatever property which actually was turned over to the corporation was valued in good faith by those representing the corporation . . ." the appellants ". . . did not meet the burden of proof [sic] required of them under the *Bole* case, supra."

This was not a proper interpretation of the *Bole* case, supra. The burden of proof never shifts, but remains on the litigant challenging the transaction: *Beaver v. Slane*, 271 Pa. 317, 114 A. 509; *Pioneer Coal Co. v. Cherrytree & Dixonville R. R. Co.*, 272 Pa. 43, 116 A. 45. Here it is the receiver who is attacking the defendants' subscription agreement. The burden, therefore, is on the receiver to prove that the defendants have not fulfilled their agreement. In so doing the liquidating receiver stands in the same position as the corporation and has no greater rights than those possessed by the corporation itself: *Lyons v. Benney*, 230 Pa. 117, 79 A. 250. The burden of going forward with the evidence may shift, however, depending on who

has the affirmative of the issue. Under the Pennsylvania Rules of Civil Procedure payment is an affirmative defense and as such must be affirmatively pleaded and proved: Pa. R. C. P. 1030; *Arabian American Oil Company v. Kirby & Kirby, Inc.*, 171 Pa. Superior Ct. 23, 90 A. 2d 410. Since the receiver stands in the same position as the corporation the defendant may take advantage of any defense that might have been made if the suit had been brought by the corporation before its insolvency: *Lyons v. Benney*, supra. Under certain circumstances factual presumptions of payment arise, however, to cast the burden of going forward with the evidence on the party asserting nonpayment. While the burden of showing the fact of payment is not shifted the legal effect of the presumption is the same as though direct evidence of payment had been introduced. Such a presumption arises from the possession of a stock certificate which purports on its face to be fully paid and non-assessable. Here the evidence shows that the subscribers possessed such certificates. The Business Corporation Law, Act of May 5, 1933, P. L. 364, art. VI, sec. 607, 15 PS 2852-607 states: "D. Every shareholder of record shall be entitled to a share certificate representing the shares owned by him, but a share certificate shall not be issued by a corporation to any shareholder until the shares represented thereby have been fully paid for." The possession, therefore, of a stock certificate purporting to be fully paid raises a presumption that the owner has paid for it. The burden then rests on the party asserting nonpayment for the stock to prove that his demand in fact has not been paid. It is a general rule that the obligor's possession of a written obligation evidencing indebtedness raises a presumption of payment: *Farrante v. Orrico*, 154 Pa. Superior Ct. 165, 35 A. 2d 575. See also *Koenig v. Curran's Restaurant & Baking*

*Company,* 317 Pa. 431, 177 A. 35; *Cauffiel v. Glenn,* 345 Pa. 181, 27 A. 2d 30. Applying these rules the burden of showing nonpayment for the subscriptions is on the receiver. The subscribers, having in their possession stock certificates which state on their face they are fully paid, are entitled to the presumption the possession creates. The record discloses that it will be extremely difficult to meet this burden in view of the inadequate records maintained by the corporation.

There is an additional reason why the burden is on the receiver. Corporate minutes are prima facie evidence of the transactions recorded therein: *KoEune v. State Bank of Schuylkill Haven,* 134 Pa. Superior Ct. 108, 4 A. 2d 234. Of course, competent testimony is always admissible to explain ambiguities, to correct errors or to supply omissions if the minutes are incomplete: *Shuman v. Main, Beaver & Black Creek Mutual Fire Insurance Co.,* 265 Pa. 38, 108 A. 265; *Loeffler's Estate,* 277 Pa. 317, 121 A. 186. But a secretary of a corporation is ordinarily estopped from challenging minutes which are certified by him: *Charles R. Hedden Co. v. Dozier,* 99 N. J. Eq. 543, 133 A. 857. Here the court below has made a finding of fact which directly contradicts the minutes of the corporation, viz.: that property had not been transferred to the corporation whereas the minutes stated that it had. These minutes were signed by the secretary of the corporation, yet it is on the testimony given at the trial by the secretary that the court based its finding of fact. The testimony of the secretary of the corporation was vague. In answer to the questions of whether property or money had been turned over to the corporation on the date of the minutes, her answers were "Not that I know of", "Not to my knowledge", "I don't know as there was any. I couldn't say there was any, nor I couldn't say there

was none there". Such testimony does not overcome the positive statements in the minutes that the property had been turned over to the corporation. Whether or not the property had, in fact, been turned over to the corporation was the proper inquiry for the court. The burden, however, as above stated, was on the receiver to prove that the property had not been delivered since the subscribers were entitled to the benefit of the presumption of payment and the presumption that the minutes were correct since there was no competent contradictory evidence.

What we say herein does not conflict with what was held in the *Bole* case, supra. In that case there was no evidence ". . . that the payment for the stock in property was ever the subject of contract or agreement between the defendant and the corporation. . . ."; that the issuance of the certificate was pursuant to any corporate action; ". . . that the directors of the corporation ever passed judgment on the value of the property defendant claims to have turned over in payment, or what the actual value of the property was. . . ." After stating that the burden was on the defendant to show a contract, Justice STEWART said that ". . . the further burden is on him of showing that the transaction was fair. . ." In the present case there was no contention made by the receiver that the transaction here was not fair nor could it be said that payment in property valued at $10,853.24 for a $10,000 obligation in property was unfair. All that was said by this Court was that, if the contract were challenged as being unfair, the burden was on the defendant to prove its fairness and had no connection with the burden of showing payment. The further requirement that the burden was on the defendant to show "the property turned over in payment had been valued by those representing the corporation in good faith" is

also irrelevant to the present facts. The Business Corporation Law, Act of May 5, 1933, P. L. 364, art. VI, sec. 603, 15 PS 2852-603 states: ". . . For the purpose of determining whether shares have been fully paid for, in order to fix the extent of the outstanding obligation of a shareholder to the corporation with respect to such shares, the value placed by the incorporators, the shareholders, or the board of directors, as the case may be, upon the consideration, other than cash, with which the subscriptions for shares are made payable, shall be conclusive." The evidence here shows that the property was valued by two of the four directors of the corporation. Since the Act makes such a valuation conclusive, and there is no indication of fraud, there was no need for these appellants to go beyond the burdens required of them in the premises.

The decree is reversed at the cost of the appellee.