Norman J. Gustavson and Virginia J. Gustavson, Husband and Wife v. Commissioner. Clarence R. Traverse and Florence S. Traverse, Husband and Wife v. Commissioner. Robert W. Gustavson and Hazel M. Gustavson, Husband and Wife v. Commissioner. Estate of Joseph Gustavson, Deceased, Norman Gustavson, Executor v. Commissioner.
Gustavson v. Commissioner
Docket Nos. 354-63, 355-63, 356-63, 357-63. 5-107.
United States Tax Court
T.C. Memo 1965-107; 1965 Tax Ct. Memo LEXIS 226; 24 T.C.M. (CCH) 570; T.C.M. (RIA) 65107; April 20, 1965
Wendell P. Weyland, for the petitioners. Joseph W. Salus, II, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in the 1960 income tax of petitioners in these consolidated cases as follows: Docket
No.
Petitioner
Deficiency
354-63
Norman J. Gustavson and
Virginia J. Gustavson
$ 829.68
355-63
Clarence R. Traverse and
Florence S. Traverse,
Husband and Wife
1,322.47
356-63
Robert W. Gustavson and
Hazel M. Gustavson, Hus-
band and Wife
1,001.36
357-63
Estate of Joseph Gustav-
son, Deceased, Norman
Gustavson, Executor
$1,438.18
All of the above named petitioners filed their 1960 returns with the district director of internal revenue for the district of Massachusetts. The named wives are *227 parties by virtue of having filed joint returns. Joseph Gustavson, the father of Norman J. and Robert W. Gustavson, died after filing his petition and Norman, the executor of his estate, was substituted as petitioner in Docket No. 357-63. The three Gustavsons and Traverse will sometimes be referred to as petitioners. The issue is whether the amounts paid to the Gustavsons and Traverse in 1960 by a corporation in which they were stockholders constituted proceeds from the sale of their stock or severance pay. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Precise Metal Products, Inc., Metal Process, Inc., and G.M.T. Realty, Inc., are each corporations organized under the laws of the Commonwealth of Massachusetts. As of June 25, 1960, each petitioner held one-fifth of all the outstanding shares of stock issued by each of these corporations. The fifth shareholder in each of these corporations, Thomas F. Maher, is not a party to these proceedings. The officers of Precise Metal Products, Inc., on and before June 25, 1960, were Joseph Gustavson, President; Norman J. Gustavson, Vice President and Clerk; Clarence R. Traverse, Vice President; *228 Thomas F. Maher, Treasurer; and Robert W. Gustavson, Assistant Treasurer. The five named individuals also constituted Precise Metal Products, Inc.'s board of directors. On June 25, 1960, each of the petitioners had an adjusted basis of $14,800 for his stock in Precise Metal Products, Inc. As for Metal Process, Inc. and G.M.T. Realty, Inc., each of the petitioners had an adjusted basis of $1,000 and $1,500 respectively. As of May 31, 1960, Precise Metal Products, Inc. had assets of $394,250.94 and liabilities of $632,926.91. These liabilities consisted of accounts payable in the amount of $234,518.81, notes maturing in less than one year of $156,433.26, other current liabilities of $196,474.84, and long-term indebtedness of $45,500. As for its capital account, it consisted of $137,500, representing common stock, and a deficit in earned surplus and undivided profits amounting to $376,175.97. Its loss for the fiscal year ending May 31, 1960 amounted to $232,209.24. The corporation's net worth as of May 31, 1960 was a minus figure, $238,675.97. Said corporation's financial situation as of June 25, 1960 was not significantly nor materially different from its May 31, 1960 position. *229 According to its records, as of September 30, 1960, Metal Process, Inc. had assets of $21,142. Notes receivable accounted for $20,769 of this total. It had no liabilities. As for its capital account, it consisted of $4,697 representing preferred stock, $5,000 representing common stock, and $11,445 representing earned surplus and undivided profits. The corporation had no receipts during the taxable year ending September 30, 1960. Further, said corporation's financial situation as of June 25, 1960 was not significantly nor materially different from its September 30, 1960 position. On June 25, 1960 each of the petitioners was jointly and severally liable to the General Electric Corporation, Flight Propulsion Division, for $70,000. This liability arose out of personal guarantees furnished to the general Electric Corporation to induce that company to place contracts and orders with Precise Metal Products, Inc. In the event that Precise Metal Products, Inc. had failed to perform on the contracts in existence as of June 25, 1960, it would have been liable to the General Electric Corporation, Flight Propulsion Division, for $70,000. On June 25, 1960 Precise Metal Products, Inc. was in *230 need of working capital in at least the sum of $125,000. Rather than furnish additional working capital in the approximate amount of $25,000 apiece to meet the needs of Precise Metal Products, Inc., the five stockholders determined to dispose of their interests in that corporation and in Metal Process, Inc. and G.M.T. Realty, Inc. Along these lines they requested Thomas F. Maher to bring them in contact with one Joseph L. Travers (unrelated to stockholder Traverse) who had exhibited some interest in Precise Metal Products, Inc. Maher contacted Travers and on June 25, 1960 there was held a special combined meeting of the stockholders and the board of directors of Precise Metal Products, Inc. with Travers and his attorney Harold Karp present. The minutes prepared by Harold Karp are the only minutes pertaining to this special combined meeting of June 25, 1960 that is contained in the official records of Precise Metal Products, Inc. These minutes recite, in part, as follows: Mr. Joseph Gustavson called the meeting to order and presided thereat. Waiver of notice of this meeting signed by all Directors and Stockholders was then read and ordered to be filed with the records hereof. *231 Upon motion duly made and seconded, it was unanimously VOTED: that Harold Karp be designated as Acting Clerk to record the minutes of this meeting. * * *
The President then reported that Norman J. Gustavson, Robert W. Gustavson, Joseph Gustavson and Clarence R. Traverse each offered to transfer to the Corporation their entire holdings of 275 shares each. Upon motion duly made and seconded, it was unanimously VOTED: that the corporation reject the foregoing offers and that all provisions of By-Laws and Articles of Organization be waived in this instance so as to permit the transfer by each of the foregoing stockholders of the 275 shares owned by each to Joseph L. Travers, and that Harold Karp, be constituted and appointed attorney to transfer the aforesaid stock on the books of the corporation. The President then read the following resignations which were submitted to the meeting: Joseph Gustavson as President and Director Robert W. Gustavson as Assistant Treasurer and Director Norman J. Gustavson as Vice President, Clerk and Director Clarence R. Traverse as Vice President and Director The President recommended that prior to voting upon the aforesaid resignations *232 that a resolution be adopted, permitting the payment of severance pay to the aforementioned resigning officers and directors to the extent of at least $100.00 dollars per week for a period of one hundred weeks inasmuch as in the opinion of the President such individuals were deserving of receiving the said severance pay. Upon motion duly made and seconded it was unanimously VOTED: That said severance pay be granted and in payment thereof, the corporation issues its promissory notes, non-negotiable in form, each in the sum of $10,000.00 dollars payable to Norman J. Gustavson, Robert W. Gustavson, Joseph Gustavson and Clarence R. Traverse, singly, payable at the rate of $100.00 dollars per week without interest, commencing July 6, 1960, and that the President and Treasurer be and they hereby are authorized and empowered for and in behalf of the corporation to execute and deliver the foregoing promissory notes. The President recommended further that the insurance policies presently written on the lives of Joseph Gustavson, Robert W. Gustavson, Norman J. Gustavson and Clarence R. Traverse wherein the corporation is the beneficiary be changed so as to designate [designation] the *233 wives or children of each such individual as beneficiary inasmuch as the prospective parties were leaving the employ of the corporation. Upon motion duly made and seconded, it was unanmiously VOTED: that the corporation assign all of its interest in the aforementioned life insurance policies to the respective individuals above named and to execute all such documents necessary for changes of beneficiaries as aforesaid. Upon motion duly made and seconded, it was unanimously VOTED: that all of the foregoing resignations of officers and directors presented to the meeting be accepted effective of the close hereof. On June 25, 1960, as the result of the special combined meeting of the stockholders and the board of directors of Precise Metal Products, Inc., each petitioner divested himself of the stock of said corporation standing in his name. This stock was then registered in the name of Joseph L. Travers. Each petitioner also divested himself of his stock in Metal Process, Inc. and G.M.T. Realty, Inc. in favor of Joseph L. Travers. Maher had decided not to sell and he had a separate agreement with Travers whereby he would later receive a one-half interest in Precise Metal Products, *234 Inc. About a year later Travers gave Maher, for no consideration, enough shares to make Maher a 50 percent owner of the corporation. On June 25, 1960, following the special combined meeting of the stockholders and the board of directors of Precise Metal Products, Inc., said corporation delivered to each petitioner its promissory note for $10,000, which principal amount was "payable, without interest, in one hundred (100) weekly installments of One Hundred ($100.00) Dollars each" commencing on July 6, 1960. Sometime shortly after June 25, 1960, said corporation assigned to petitioners all policies of insurance, owned by the corporation, in which petitioners were the insureds and the corporation was the beneficiary. The corporation at this same time executed and delivered to petitioners all documents necessary to accomplish the assignment of these policies. The policies in which Norman J. Gustavson was the insured had a fair market value of $624.13 at the time of assignment. Those with respect to Clarence R. Traverse had a fair market value of $2,410.24. The fair market value of the policies in which Robert W. Gustavson was the insured was $1,873.32. The policies in which Joseph *235 Gustavson was the insured had a fair market value of $2,188.94. On June 25, 1960, each petitioner executed a receipt whereby he acknowledged payment in full of any and all obligations due from Precise Metal Products, Inc., Metal Process, Inc., and G.M.T. Realty, Inc., except the $10,000 note and the insurance policies referred to above. Each receipt was in all respects identical to the one executed by Joseph Gustavson. Each petitioner on June 25, 1960, was, and had been for many years prior thereto, a full-time employee of Precise Metals, Inc. Each petitioner resigned from and severed his employment relationship with said corporation on June 25, 1960. On June 27, 1960, Joseph L. Travers and Thomas F. Maher traveled to Cincinnati to meet with a Mr. Davis of the General Electric Corporation, Flight Propulsion Division, in order that the petitioners might be released from the personal guarantees that they had furnished that company. On that day Davis orally assented to the releasing of petitioners and subsequently returned the personal guarantees to Maher. Each of the petitioners received $100 a week or a total of $2,700 in 1960 from Precise Metal Products, Inc. as payments on *236 the corporation's notes above described. Respondent determined the $2,700 and the amounts representing the value of the life insurance policy each petitioner received were received as compensation and thus ordinary income and they did not constitute payments for the sale or exchange of the capital stock of Precise Metal Products, Inc. Opinion Petitioners argue that they sold their stock in Precise Metal Products, Inc. to Travers for the following consideration: (1) $10,000 to be represented by a note to be paid $100 a week, (2) transfer of life insurance policies on their lives held by the corporation, and (3) release from liability on their personal performance bond with General Electric. Respondent argues the stock was transferred in consideration for the third term, namely, the release from personal liability under the performance bond and that the other alleged items, money represented by notes and insurance policies, constituted severance pay. Petitioners make no separate arguments with respect to the notes or the insurance policies, i.e., that one might be severance pay and the other consideration for the stock transfers. Certainly respondent is supported by the minutes *237 of the stockholders' meeting of June 25, 1960. There is nothing in the minutes to show the notes and policies were to be consideration for stock. The minutes show that the President of the corporation "recommended" that severance pay of $100 a week for 100 weeks be granted to petitioners and "recommended further" that the beneficiaries of insurance policies be changed from the corporation to insureds' wives or children "inasmuch as the respective parties were leaving the employ of the corporation." The minutes show these recommendations were voted upon and unanimously adopted. Petitioners' answer is that the minutes of the corporation meeting are false. It is admitted that Harold Karp was unanimously designated acting clerk of this June 25, 1960 stockholders' meeting. It is also admitted that the minutes prepared by Harold Karp which are in evidence here are taken from the official records of Precise Metal Products, Inc. and is the only set of minutes pertaining to this meeting. In addition to the minutes we have the testimony of Travers who was at the meeting of June 25, 1960 and the testimony of Karp. Travers testified he was willing to have the stockholders assign their stock *238 over to him and that he did not agree to pay them any money as he considered the stock worthless. He stated that he was aware of the vote for severance pay and that he agreed to this as he felt these petitioners had worked for the company for a period of years and were now being wiped out and should be entitled to something if the corporation had future earnings and became able to pay. He is corroborated by Karp who testified he remembered about the severance pay being suggested and voted upon and he thought there might have been some discussion by Travers and Maher who were to remain stockholders indicating a willingness to go along with the $10,000 to be paid to each of the petitioners by the corporation. He stated there was no offer by petitioners to sell their stock and no offer by Travers to buy it. He said: My understanding was that they were turning the stock over to Mr. Travers and Mr. Travers didn't have to pay money for the stock. The only thing he agreed to was to take over and guarantee some of the obligations for the corporation. * * * Petitioners did not see fit to cross-examine either Travers or Karp. As against this we have the testimony of Robert Gustavson who *239 testified the question of severance pay was not discussed and that Travers offered $10,000 to each of the four stockholders for his stock. At another place he said: "As far as I recall" and "to the best of my knowledge" Travers made this offer of $10,000 for the stock personally. Clarence Traverse's recollection was that Joseph Travers' offer of $10,000 for the stock was "[through] an agent." It was his recollection that Norman Gustavson was the clerk and the only clerk of the meeting of June 25, 1960. He was not asked any questions as to whether the matter of severance pay was proposed, discussed or voted upon. Thomas Maher couldn't recall definitely whether Travers had made an offer of $10,000 for the stock: "I don't recall whether he made an offer personally or not. I believe he did - I am not sure." He had no recollection that severance pay was mentioned at the meeting. Later when asked if anything was said about severance pay he replied: "Not to my knowledge. That is the truth." It was his recollection that Karp was the clerk of the meeting. The minutes prepared by Karp are the official minutes of the meeting. As such they are admissible and they constitute competent evidence *240 of the corporate action taken at the June 25, 1960 combined stockholders' and directors' meeting. Mass. Ann. Laws ch. 155, sec. 22. Petitioners had the burden to prove respondent's determination was erroneous because of the presumption of correctness that attaches to the determination and also because "[corporate] minutes are prima facie evidence of the transactions recorded therein." Schmidt v. Paul, 377 Pa. 377, 105 A. 2d 118, at p. 121. See also 32A C.J.S. Evidence § 767, pp. 72, 73. Here the testimony that petitioners say contradicts the positive statements in the minutes is vague and inconclusive. It consists largely of somewhat unsure present recollections on the part of two stockholders of what did and what did not transpire at the meeting. We hold it insufficient to overcome the positive statements in the minutes and the testimony of Travers and Karp. There is some evidence that at first the corporation made withholding from the $100 a week it paid petitioners for income tax and social security and when petitioners remonstrated this was stopped. Travers testified he stopped the withholding because he realized this question of whether it was severance pay *241 was a "disputed question." This evidence adds but little to petitioners' case. It cannot be said that such testimony is much of an indication that the statements in the minutes are false. It could as well be argued that the testimony of the early withholding is some corroboration of the minutes. Abandoning the withholding (paying petitioners instead of the Government) was recognition of the dispute and not a concession by Travers that the $100 a week was anything but severance pay. On the whole record we hold for respondent on the issue presented. Decisions will be entered for the respondent.