537 A.2d 857

**LEZZER CASH & CARRY, INC., Appellee,**

v.

**AETNA INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 7, 1987.

Filed Feb. 17, 1988.

138

Joan A. Yue, Philadelphia, for appellant.

Joseph P. Green, Bellefonte, for appellee.

Before ROWLEY, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

Shaffer Gordon Associates (SGA) contracted with Pennsylvania Housing Partners (PHP) to act as the general contractor to construct the Daniel Scott Commons, a housing project in Chester, Delaware County. The project was being financed in major part by the Department of Housing and Urban Development (HUD) pursuant to a loan agreement which required the contractor to obtain a payment bond. This bond was purchased from Aetna Insurance Company on September 22, 1982. It named SGA as principal, Aetna as surety, and PHP as obligee. Prior to the start of construction, SGA obtained approval from HUD to name Oreland Housing, Inc. (Oreland) as subcontractor. Oreland entered a purchase order with Independence Homes, Inc. (Independence) for the materials necessary to the framing of the building. Independence, in turn, contracted with Lezzer Cash & Carry, Inc. (Lezzer) for the purchase of certain building materials required by Independence in performing its contract with Oreland. At the same time as this contract was in effect, Lezzer was supplying materials to Independence on five other projects for which SGA was the general contractor. Lezzer completed all deliveries to the Scott project by February 8, 1983. In late February or March, 1983, Lezzer's sales manager called representatives of SGA and Aetna by telephone on several occasions to tell them that Lezzer had not received payment from Independence.[1] In April, 1983, Independence sent to Lezzer a check which purported to be in payment for all materials supplied to the Scott project. When deposited, however, the check was returned for insufficient funds. On May 16, 1983, Lezzer for the first time sent written notice to Aetna that it was looking to Aetna to pay the invoices for materials which it had supplied to the Scott project.

■ When payment was not forthcoming, Lezzer filed a civil action against Aetna to recover the cost of such materials, and, following trial without jury and the determination

1. It appears that Independence had already been paid for the materials sold and delivered by Lezzer to the Scott project.

of post-trial motions, recovered a judgment in the amount of $51,834.09 plus interest. On appeal, Aetna contends that the trial court erred by (1) determining that Lezzer was within the class of claimants protected by the bond, and (2) holding that oral notice was adequate compliance with the condition precedent of the bond which required written notice within ninety (90) days after the last of the materials had been furnished.[2]

■ The bond defines a claimant whose claim will be honored as

> one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

On the basis of this definition, Aetna argues that Lezzer was not a claimant who is within the class of persons protected by the payment bond. Because Lezzer did not have a contract with SGA or with a subcontractor of SGA, Aetna argues, payment of Lezzer's claim is not guaranteed by the bond.

2. Aetna also contends that the trial court erred when it held that payment was an affirmative defense which was waived by not being pleaded and then refused to allow an amendment to Aetna's answer to allege payment. In the same vein, Aetna contends that Lezzer failed to prove that it had not been paid for materials supplied to the Scott project. We find no merit in appellant's arguments. Payment is an affirmative defense which must be pleaded. See: Pa.R.C.P. 1030; *Schmidt v. Paul,* 377 Pa. 377, 105 A.2d 118 (1954); *Arabian American Oil Co. v. Kirby & Kirby, Inc.,* 171 Pa.Super. 23, 90 A.2d 410 (1952). Moreover, it is difficult to find an abuse of discretion in the denial of a request to amend the pleadings which is made for the first time after the conclusion of the trial and more than a year and a half after the original answer had been filed. See: *Solomon v. A. Julian, Inc.,* 304 Pa.Super. 119, 450 A.2d 130 (1982); *Dale v. Crawford,* 274 Pa.Super. 483, 418 A.2d 509 (1980). Finally, a review of the record discloses evidentiary support for the trial court's finding that Independence did not pay Lezzer for the materials supplied. However, Independence had been paid for such materials by Oreland.

Section 2(a) of the Miller Act, 40 U.S.C.A. § 270b(a), contains the same limitation on the right to recover as that specified in the Aetna bond. Therefore, we look to and find instructive those federal court decisions which have interpreted the Miller Act. In *United States ex rel. K & M Corp. v. A & M Gregos, Inc.*, 607 F.2d 44, 46–47 (3d Cir.1979), the Court of Appeals for the Third Circuit defined the significance of section 270b(a) as follows:

On any construction contract with the United States exceeding $25,000 in amount, the Miller Act requires the prime contractor to execute a bond "for the protection of all persons supplying labor and materials." 40 U.S.C. § 270a(a)(2) (1976). Any protected supplier of materials or labor may sue on the bond for amounts due him. *Id.* § 270b(a). But the Act imposes limitations on this right. A person "having a direct contractual relationship with a subcontractor" but no privity of contract with the prime contractor may sue only if he gives the prime contractor notice of his claim within ninety days of the completion of his work. *Id.*

The Supreme Court, and prior to its decision a majority of the federal circuits, read this last provision as limiting the right to sue on a payment bond to persons with a direct contractual relationship with either the prime contractor or a subcontractor, and it read the term "subcontractor" as meaning first-tier subcontractor. *J.W. Bateson Co. v. United States ex rel. Board of the Trustees of National Automatic Sprinkler Industry Pension Fund*, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978). See also *In re Garden State Erectors, Inc. v. A. Leo Nash Steel Corp.*, 599 F.2d 1279 (3d Cir.1979).

. . . .

We agree that *Bateson* rules out a holding that the court may look to the functions carried out by contracting parties, rather than to the position they occupy in the contractual structure, to identify the first-tier subcontractor. In *Bateson*, the court of appeals had ruled that a certain company, formally a second-tier subcontractor,

should be deemed a first-tier subcontractor on the basis of its close and substantial working relationship with the prime contractor. The Supreme Court found this reasoning inconsistent with the language and legislative history of the Miller Act. 434 U.S. at 593–94, 98 S.Ct. 873. The clear import of *Bateson* is that Congress imposed a structurally defined limitation on the right to sue on a payment bond, which was not to be overstepped by a functional examination of the relationships of the contracting parties.

See also: *United States ex rel. Metal Manufacturing, Inc. v. Federal Insurance Co.*, 656 F.Supp. 1194, 1199–1200 (D.Ariz.1987).

In the instant case, Lezzer had contracted with Independence, which had contracted with Oreland. Oreland was the subcontractor who had contracted with SGA, the general contractor. Thus, Lezzer was not in a direct contractual relationship with SGA or a subcontractor of SGA; Lezzer was, rather, a third-tier subcontractor. On the surface, therefore, it would appear that Lezzer is not one of those whose claims for materials was protected by the bond issued by Aetna.

The trial court held, however, that Independence was a first-tier subcontractor and that, therefore, Lezzer was a materialman who had a direct contract with a subcontractor, i.e., Independence. This finding is not supported by the record. The evidence discloses unequivocally that Lezzer had sold materials to Independence which, in turn, had contracted with Oreland, the first-tier subcontractor, to furnish and deliver to the job site all materials necessary for framing the buildings, including interior partitions and floor framing, exterior walls and roofs, wooden stairs, and windows.

█ In applying this limitation on the right to recover, the federal courts have created exceptions in cases where it is appropriate to pierce the corporate veil, i.e., where two corporations in the contractual chain are alter egos. See: *United States ex rel. K & M Corp. v. A & M Gregos, Inc.*,

*supra* at 47–48. See also: *Glens Falls Insurance Co. v. Newton Lumber & Manufacturing Co.,* 388 F.2d 66 (10th Cir.1967), *cert. denied,* 390 U.S. 905, 88 S.Ct. 821, 19 L.Ed.2d 873 (1968); *Continental Casualty Co. v. United States ex rel. Conroe Creosoting Co.,* 308 F.2d 846 (5th Cir.1962). Based on these decisions, Lezzer argues before this Court that SGA, the general contractor, and Oreland, the subcontractor, were alter egos and should be treated as one general contractor. The record, however, is inadequate to permit such a determination.

Although the record is clear that there were separate contracts (1) between SGA and Oreland, and (2) between Oreland and Independence, the trial court found that SGA and Oreland shared the same office and telephone. However, the trial court found no further facts relevant to this issue and concluded that "[s]ince we have found that Independence was a subcontractor in its relation to the Scott Project, it is not necessary to determine whether Oreland was the alter ego of SGA for purposes of determining Independence's status under the Bond."

We have made an independent examination of the record and conclude therefrom that the evidence is insufficient to support a determination that the corporate veil should be pierced.

> [The] legal fiction of a separate corporate entity was designed to serve convenience and justice, *Great Oak Building and Loan Assoc. v. Rosenheim,* 341 Pa. 132, 19 A.2d 95 (1941), and will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless. *Gagnon v. Speback,* 389 Pa. 17, 131 A.2d 619 (1957). We have said that whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded. *Watercolor Group, Inc. v. Newbauer, Inc.,* 468 Pa. 103, 360 A.2d 200 (1976).

*Ashley v. Ashley,* 482 Pa. 228, 237, 393 A.2d 637, 641 (1978); *Chambers v. Todd Steel Pickling, Inc.,* 323 Pa.Super. 119, 129, 470 A.2d 159, 164 (1983). See also: *Rinck v. Rinck,* 363 Pa.Super. 593, 526 A.2d 1221 (1987). In the instant case, there is no evidence of common ownership or interlocking boards of directors of the two corporations. Moreover, there is no evidence of fraud, illegality, or wrongdoing. Finally, there is no need to pierce the corporate veil in order to avoid injustice. As to the corporate enterprises of SGA and Oreland, whatever their relationship may be, both Aetna and Lezzer are not involved. On the contrary, both are innocent parties. Aetna issued a payment bond as requested by SGA and included therein terms which were satisfactory to SGA, the principal, and PHP, the obligee. Lezzer entered a contract to sell materials to Independence, with whom it had been doing business on prior occasions. It did so with knowledge of or the ability to learn the terms of the payment bond which had been issued by Aetna. As between Aetna and Lezzer, both innocent parties, there was no reason to pierce the corporate veils of SGA and Oreland in order to alter the terms of the bond which Aetna had agreed to write to protect designated subcontractors and materialmen.

■ Moreover, Lezzer failed to comply with the notice requirements of the bond. As a general rule, a surety is obligated only to the extent provided in the agreement of suretyship. See: *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960); *Miller v. Commercial Electric Construction, Inc.,* 223 Pa.Super. 216, 297 A.2d 487 (1972); *General State Authority v. Sutter Corp.,* 44 Pa.Cmwlth. 156, 403 A.2d 1022 (1979); 35 P.L.E. Suretyship §§ 52, 58. "Ordinarily, a creditor is not bound to give the surety notice of the principal debtor's default, and a surety will be discharged upon the creditor's failure to notify the surety of such default only if the contract of suretyship requires that notice of default be given." 35 P.L.E. Suretyship § 79. In the instant case, the bond required notice. It provided as follows:

3. No suit or action shall be commenced hereunder by any claimant:

a) Unless claimant, other than one having direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

This court has upheld reasonable notice provisions contained in surety bonds and has determined the rationale for doing so as follows:

[T]he requirement of notice is a sensible and necessary provision, one which has been recognized by legislatures and courts. Its purpose, which is to permit general contractors to make payments to subcontractors without fear of subsequent suits by material suppliers who have not made their claims known, is vital for the protection of contractor and surety. The lower tier, materialman on the other hand, has the obligation to inspect the law and bond and is afforded ample opportunity to furnish notice of default. Having failed to comply with the reasonable condition precedent as to notice, the appellee's claim should not be allowed.

*Barati v. M.S.I. Corp.*, 212 Pa.Super. 536, 542–543, 243 A.2d 170, 174 (1968). See also: *Scranton School District v. Casualty and Surety Co. of Hartford*, 98 Pa.Super. 599 (1930). In *Morefield Communications, Inc. v. Pursel Con-*

*struction Co., Inc.*, 359 Pa.Super. 514, 519 A.2d 470 (1986), we enforced a similar notice provision.[3] We held that a materialman, who had given written notice on the ninety-sixth day following the furnishing of the last of the materials for which the claim was being made, was not entitled to recover against a surety whose bond had required written notice within ninety days.

Here, written notice undeniably was not given within the ninety day period specified in the bond. However, Lezzer had called SGA and Aetna by telephone and had related that it did not receive payment for the materials supplied to Independence for use on the Scott Project. Based on these telephone calls, the trial court found that Aetna had had actual notice of Lezzer's claim within the ninety day period. Moreover, since the only reason for the notice provision contained in the payment bond was to ensure that there would be evidence of the giving of the required notice, the court held, the notice condition of the bond had been satisfied. Aetna concedes the telephone calls but challenges the trial court's conclusion that Lezzer had complied with the condition of the bond. It argues that oral notice does not satisfy a provision which specifically requires written notice, and, further, that the oral notice which Lezzer did give failed to convey the fact that a claim was being made against SGA and/or Aetna, as required by the terms of the bond.

3. The notice provision at issue in *Morefield Communications, Inc. v. Pursel Construction Co., Inc.*, 359 Pa.Super. 514, 519 A.2d 470 (1986), provided as follows:

> No suit or action shall be commenced hereunder by any claimant: (a) Unless claimant, other than one having direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, **within ninety (90) days after such claimant ... furnished the last of the materials for which said claim is made,** stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished ... Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety....

*Id.*, 359 Pa.Superior Ct. at 516–517, 519 A.2d at 471.

We are unable to find any appellate decisions in this Commonwealth resolving the precise issue presented by this case. In interpreting notice provisions in the past, we have looked for guidance to the body of federal case law which has evolved under Section 2(a) of the Miller Act. See: *Morefield Communications, Inc. v. Pursel Construction Co., Inc., supra*, 359 Pa.Superior Ct. at 517, 519 A.2d at 471. Section 2(a) of the Miller Act provides:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.* Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop [sic] addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

40 U.S.C.A. § 270b(a) (emphasis added).[4] This notice provision is similar to the one contained in the payment bond which is at issue in this case. The only substantial difference is that the Miller Act notice is to be given to the general contractor only; whereas, under the payment bond at issue in this case, notice may be given to any two of either the principal (general contractor), the owner (obligee), or the surety.

Under federal case law the giving of written notice, as specified in section 2(a) of the Miller Act, has been held to be a condition precedent to the right of a supplier to bring an action on a payment bond. *Bowden v. United States ex rel. Malloy*, 239 F.2d 572 (9th Cir.1956), *cert. denied*, 353

4. A similar provision is found in section 194 of Pennsylvania's Public Works Contractors' Bond Law, which provides:

**§ 194.   Actions on payment bonds;  service of notice**

(a) Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given, pursuant to the provisions of subsection (a) of section 3 of this act, and who has not been paid in full therefor before the expiration of ninety days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which he claims payments, may bring an action on such payment bond in his own name, in assumpsit, to recover any amount due him for such labor or material, and may prosecute such action to final judgment and have execution on the judgment.

(b) Any claimant who has a direct contractual relationship with any subcontractor of the prime contractor who gave such payment bond but has no contractual relationship, express or implied, with such prime contractor may bring an action on the payment bond only if he has given written notice to such contractor within ninety days from the date on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment, stating with substantial accuracy the amount claimed and the name of the person for whom the work was performed or to whom the material was furnished.

Notice shall be served by registered or certified mail, postage prepaid, in an envelope addressed to such contractor at any place where his office is regularly maintained for the transaction of business or served in any manner in which legal process may be served in the manner now or hereafter provided by law for the service of a summons, except that such service need not be made by a public officer.

Act of December 20, 1967, P.L. 869, § 4, 8 P.S. § 194.

U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957). The *Bowden* court stated specifically that:

> We think the teaching of the cases which have dealt most soundly with questions regarding the sufficiency of notice when it is required to be given by Section 270b(a) may be fairly summarized as follows: The giving of the written notice specified by the statute is a condition precedent to the right of a supplier to sue on the payment bond; the writing must be sent or presented to the prime contractor by or on the authority of the supplier; and the writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill.

*Id.* at 577 (footnote omitted). See also: *Liles Construction Co. v. United States ex rel. Stabler Paint Manufacturing Co., Inc.,* 415 F.2d 889, 890 (5th Cir.1969); *United States ex rel. Automatic Sprinkler Corp. of America v. Merritt–Chapman & Scott Corp.,* 305 F.2d 121, 123 (3d Cir.1962); *T.F. Scholes, Inc. v. United States ex rel. H.W. Moore Equipment Co.,* 295 F.2d 366, 369 (10th Cir.1961); *United States ex rel. American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co.,* 122 F.2d 600, 602 (8th Cir.1941); *United States ex rel. Tecot Electric Supply Co. v. New Amsterdam Casualty Co.,* 185 F.Supp. 316, 317 (E.D.Pa.1960).

The specific question regarding whether oral notice by telephone can satisfy the written notice requirement under section 2(a) of the Miller Act was addressed by the United States District Court for Delaware in *United States ex rel. Excavation Construction, Inc. v. Glenn–Stewart–Pinckney Builders and Developers, Inc.,* 388 F.Supp. 289 (D.Del. 1975). The court concluded that telephone conversations did not satisfy the written notice requirement of the Miller Act. See also: *United States ex rel. Fordham v. P.W. Parker, Inc.,* 504 F.Supp. 1066, 1070 n. 3 (D.Md.1980). The court reasoned:

> It is true that the Act is entitled to a liberal construction and application to give effect to the Congressional

intent of protecting those whose labor and materials go into public projects. *MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890 [893], 88 L.Ed. 1163 (1944). However, "such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds." *MacEvoy Co.* at 107, 64 S.Ct. at 893. Accordingly, the Supreme Court has found that the Act provides a broad but not unlimited protection and one such limitation is that materialmen such as the use plaintiff here must give the "statutory notice" of their claim to bring suit on a payment bond. *United States v. Carter*, 353 U.S. 210, 217, 77 S.Ct. 793 [797], 1 L.Ed.2d 776 (1957). Thus, ... courts have continued to interpret the statutory requirement of written notice as a condition precedent to bringing suit in spite of a general policy of giving the Act a liberal construction.

. . . .

The purpose for the statutory requirement that the notice be in writing is to prevent misunderstanding between the parties and to afford certain minimal evidence of communication between the parties. *Coffee v. United States*, 157 F.2d 968, 969 (C.A.5, 1946) and *Apache Powder Company v. Ashton Co.*, 264 F.2d 417, 421 (C.A.9, 1959). Hence, the elimination of a requirement of any written form of notice in a case where the receipt and content of notice is disputed would tend to emasculate the clear intent of the statute to avoid such disputes. See *United States v. F.A. Baehner, Inc.*, 326 F.2d 556, 558 (C.A.2, 1964).

*United States ex rel. Excavation Construction, Inc. v. Glenn–Stewart–Pinckney Builders and Developers, Inc.*, *supra* at 296–297. In the same case, the court specifically rejected an argument that undisputed oral notice would relieve the claimant from the condition requiring written notice. The court concluded that "[w]ritten notice would evidence the nature of the communication and shed light on the context in which any information about the claim was given," and would, further, indicate whether or not the

general contractor could justifiably conclude that the communication was merely an attempt by the materialman to solicit the general contractor's help in collecting from the subcontractor or formal notice by the materialman of an intent to collect directly from the general contractor and its surety. *Id.* at 297.

The notice requirement imposed by the Miller Act must apprise the general contractor of the amount of the claim and that the supplier or materialman is looking to the general contractor or its surety for payment. See: *United States ex rel. San Joaquin Blocklite v. Lloyd E. Tull, Inc.,* 770 F.2d 862, 865 (9th Cir.1985); *United States ex rel. Kinlau Sheet Metal Works, Inc. v. Great American Insurance Co.,* 537 F.2d 222, 223 (5th Cir.1976); *United States ex rel. J.A. Edwards & Co. v. Thompson Construction Corp.,* 273 F.2d 873, 876 (2d Cir.1959), *cert. denied,* 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960). The communication in the instant case not only was not in writing, but it recited only that Lezzer had been supplying materials to Independence and that it had not been paid by Independence. The occurrence and the content of the several telephone conversations are undisputed. See: Trial Court's Findings of Fact 30–35. At no time did Lezzer orally inform SGA and Aetna of either the amount of the claim or that Lezzer was in fact asserting a claim under the payment bond. Thus, even the oral notice upon which Lezzer relied was inadequate to comply with the notice required by the bond. It did not put Aetna on notice that a claim was being made against the surety bond or inform Aetna of the amount of the claim.

Despite the inadequacy of the notice, the trial court held that the oral conversations complied with the notice condition of the bond because they provided Aetna with knowledge of a potential claim. We disagree with the trial court's analysis. In analyzing the notice requirement under the Miller Act, the court in *Bowden v. United States ex rel. Malloy, supra,* stated:

A brief letter from the supplier to the prime contractor will make certain and unambiguous the rights and liabili-

ties of all concerned—the supplier, the prime contractor, and the surety. We do not believe that Congress intended to have it held that such little expenditure of effort is too much diligence to require of a supplier in order that he may secure his right of action on the payment bond.

*Id.* at 578 (footnote omitted). Although we acknowledge that the Miller Act is not directly applicable to the payment bond at issue in the instant case, the fact that the notice provision of that bond is substantially similar to section 2(a) of the Miller Act is of assistance to us in interpreting the language of the bond in the instant case. Moreover, the reasoning of the federal courts is persuasive. Such an interpretation will not only bring Pennsylvania in line with the federal decisions, but it will be consistent with the general rule in this Commonwealth that a surety is only obligated to the extent set forth in its agreement. See: *Peter J. Mascaro Co. v. Milonas, supra; Miller v. Commercial Electric Construction, Inc., supra; General State Authority v. Sutter Corp., supra;* 35 P.L.E. Suretyship §§ 52, 58. The notice provision at issue here stated specifically that written notice within the ninety day period was a condition precedent to Aetna's liability on the bond. We are obliged to enforce the terms of the agreement. We may not impose upon Aetna an obligation to answer for the debts of another when its agreement specifically excludes claims by materialmen who have not contracted with the general contractor or a first-tier subcontractor and who have not given notice of their claims as required by the bond. This is peculiarly so where, as here, the payment guaranteed by Aetna, i.e., payment by the general contractor to the first-tier subcontractor and, in turn, by the first-tier subcontractor to the second-tier subcontractor, had been made and the default by the second-tier subcontractor in failing to pay its materialmen was not a risk included within the guarantee afforded by the terms of the bond. For all these reasons, we are constrained to conclude that the trial court erred when it found that Lezzer was a party

entitled to recover on the payment bond issued by Aetna to SGA in connection with the Scott Project.

Judgment reversed and now entered in favor of appellant.