Kenneth CULBRETH, Appellant,

v.

AMOSA (PTY) LTD., Cape Asbestos Fibers, Cape Asbestos S.A. (PVT) United, Ltd., Cape Industries, Charter Consolidated Investments, Ltd., Charter Consolidated P.L.C., Huxley Development Corporation, Special Material Wisconsin, Transvaal & Consolidated Land, Turner & Newall, Ltd., Appellees.

No. 89–1542.

United States Court of Appeals,
Third Circuit.

Submitted Under Third
Circuit Rule 12(6)
March 1, 1990.

Decided March 13, 1990.

Robert E. Paul, Paul, Reich & Myers, Philadelphia, Pa., for appellant.

Werner L. Polak, Shearman & Sterling, New York City, and Albert G. Bixler, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, Pa., for appellees Charter Consolidated Investments, Ltd. and Charter Consolidated, P.L.C.

Before HUTCHINSON and COWEN, Circuit Judges, and LECHNER, District Judge.*

OPINION OF THE COURT

PER CURIAM.

Kenneth Culbreth (Culbreth), appellant and plaintiff below, appeals an order of the United States District Court for the East-

* Hon. Alfred J. Lechner, Jr., District Judge of the United States District Court for the District of New Jersey, sitting by designation.

ern District of Pennsylvania dated May 18, 1989 granting the motion of appellees, Charter Consolidated P.L.C. and several of its subsidiaries (hereinafter collectively "Charter"), for summary judgment on all claims, cross-claims and third-party claims against Charter in Culbreth's action against Charter and other unrelated defendants for damages he suffered as a result of exposure to asbestos marketed in the United States by North American Asbestos Corporation (NAAC). NAAC is an Illinois subsidiary of Cape Industries P.L.C. (Cape), a corporation incorporated in 1893 under the laws of the United Kingdom. In 1965, Charter was itself incorporated under the laws of the United Kingdom and thereafter became Cape's majority shareholder. For the reasons stated below, we will affirm.

The stock of both Charter Consolidated P.L.C. and Cape is publicly traded. They maintain offices in different places in England. In 1965, Charter acquired about sixteen percent of Cape's voting stock, but after a 1969 tender offer became the owner of somewhat more than two-thirds of Cape's voting stock. Culbreth claimed that Cape became Charter's mere alter-ego and, as such, was used by Charter to effect, through NAAC, Cape's own alter-ego, a scheme to avoid liability for damages Culbreth suffered from the asbestos Cape marketed in Pennsylvania through NAAC.

█ The district court had subject matter jurisdiction over this diversity case under 28 U.S.C.A. § 1332 (West Supp.1989). The district court's order granting summary judgment on all claims, cross-claims and other claims involving the Charter defendants did not dispose of the claims against all parties. However, the district court entered final judgment as to the Charter defendants and certified it for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b). We agree with the district court that its order is final as to the Charter defendants and see no reason to disturb its ruling that there is no just reason for

delay. Accordingly, we have jurisdiction over this interlocutory appeal by virtue of the district court's Rule 54(b) certification and 28 U.S.C.A. § 1291 (West Supp.1989).

Although this particular appeal is brought only in Culbreth's name, the plaintiffs in nine other asbestos actions have stipulated that they will be bound by our decision.[1] In addition, there are about 200 to 250 other asbestos plaintiffs who have asserted claims against Charter in the United States District Court for the Eastern District of Pennsylvania on the same theory as Culbreth, but apparently did not respond to Charter's motion for summary judgment.

█ This appeal is controlled by our decisions in *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145 (3d Cir.1988). In *Craig,* we decided that Charter was entitled to summary judgment on the alter-ego theory under New Jersey law. There is no material factual difference between this case and *Craig.* Culbreth contends that *Craig* is not controlling because New Jersey law requires a plaintiff seeking to recover on an alter-ego theory to show the controlling corporation engaged in fraud or deceit in the manipulation of the controlled corporation, whereas Pennsylvania requires only that the person asserting an alter-ego theory show an injustice resulted from the controller's manipulation of its alter-ego.

Assuming that Pennsylvania will permit recovery on an alter-ego theory on a showing of injustice, as opposed to fraud or deceit (a point not yet decided by the Pennsylvania Supreme Court), it is nevertheless plain that Pennsylvania, like New Jersey, does not allow recovery unless the party seeking to pierce the corporate veil on an alter-ego theory establishes that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham. *See In re Penn Cent. Sec. Litig.,* 335 F.Supp. 1026, 1035 (E.D.Pa.1971); *Ash-*

---

1. The other plaintiffs are James D. Parker, John Long, Maggie Pendleton, Robert J. Lee, Paul and Ada White, Rosario and Eva Gambone, John Savage, Leo and Patricia Casey and Ernest F. and Bernice Carey.

*ley v. Ashley,* 482 Pa. 228, 236–238, 393 A.2d 637, 641 (1978). In other words, both Pennsylvania and New Jersey require a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons. In *Craig,* we held that Charter did not so dominate Cape. Since Pennsylvania law does not differ from New Jersey law in requiring a showing of such pervasive domination, Culbreth failed to establish the threshold to a finding that Cape was Charter's alter-ego. Thus, the issue of whether Pennsylvania law differs from that of New Jersey on whether injustice, without fraud, is sufficient to pierce the corporate veil on an alter-ego theory need not be reached.

In arguing that Cape is Charter's alter-ego, Culbreth relies primarily on *Barber v. Pittsburgh Corning Corp.,* 317 Pa.Super. 285, 464 A.2d 323 (1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 346 (1984). The issue before the Pennsylvania Superior Court in that appeal was whether there was sufficient evidence to establish that Pennsylvania had jurisdiction over Charter as a result of Cape's activities. It did not decide or discuss the liability issue. Indeed, on remand, the Court of Common Pleas of Allegheny County held in *Barber* that the evidence presented was insufficient to establish liability and granted summary judgment to Charter. *See Barber v. Pittsburgh Corning Corp.,* No. GD79–21544 (Pa.C.P. Allegh.Co. Oct. 11, 1984) (order), *reprinted in* Appendix at 626. Thus, *Barber* does not hold or even suggest that Cape is the alter-ego of Charter for the purposes of liability.

For the reasons stated above, we will affirm the district court's order granting summary judgment in favor of Charter.