HUTCHINSON, Circuit Judge,
dissenting.
I respectfully dissent from the Court’s decision to affirm the district court’s March 2, 1994 order. In my view, the district court erred as a matter of law in piercing the corporate veil. This case does not involve exceptional circumstances, nor demand the use of this extraordinary remedy to impose liability on Hartford, an independent third-party surety. Moreover, the district court’s factual findings leave me with a definite and firm conviction that a mistake was committed. In my opinion, the Court embraces, contrary to applicable Pennsylvania law, an overly broad view of the doctrine that permits a court to pierce the corporate veil in extraordinary cases to prevent fraud or injustice. In addition, I believe the Court’s holding is likely to unsettle the reasonable expectations of parties who secure bonds for the payment of materialmen and suppliers (as well as others) in construction projects and reduce competition in the industry.[1]
Local 542 concedes that it did not give Hartford ninety days notice of its claims in accord with the bond terms. Pennsylvania law requires compliance with this type of *516 notice provision as a condition precedent to recovery on a payment bond. See Lezzer Cash & Carry, Inc. v. Aetna Ins. Co., 371 Pa.Super. 137, 537 A.2d 857, 865 (“The notice provision at issue here stated specifically that written notice within the ninety day period was a condition precedent to Aetna’s liability on the bond. We are obliged to enforce the terms of the agreement.”), appeal denied, 519 Pa. 666, 548 A.2d 256 (1988). Therefore, Local 542 cannot recover against Hartford unless it can prevail under an alter ego theory.
Pennsylvania law is unclear as to whether the finding of alter ego is a question of fact or law. I am not insensitive to this Court’s statement, applying federal law, that “[a] finding of an alter ego situation is a factual one and must be supported by the record.”[2] Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc., 727 F.2d 279, 283 (3d Cir.1983) (citation omitted). More recently, however, we stated:
Assuming that Pennsylvania will permit recovery on an alter-ego theory on a showing of injustice, as opposed to fraud or deceit (a point not yet decided by the Pennsylvania Supreme Court), it is nevertheless plain that Pennsylvania, like New Jersey, does not allow recovery unless the party seeking to pierce the corporate veil on an alter-ego theory establishes that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham. See In re Penn Cent. Sec. Litig., 335 F.Supp. 1026, 1035 (E.D.Pa.1971); Ashley v. Ashley, 482 Pa. 228, 236-238, 393 A.2d 637, 641 (1978). In other words, both Pennsylvania and New Jersey require a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller’s tugs on its strings or pressure on its buttons.
Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 14-15 (3d Cir.1990) (per curiam); see also Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir.1988). The Culbreth standard has been followed by several district courts. See Jiffy Lube Int’l, Inc. v. Jiffy Lube of Pa., Inc., 848 F.Supp 569, 580 (E.D.Pa.1994); May v. Club Med Sales, Inc., 832 F.Supp. 937, 938-39 (E.D.Pa.1993); Stinson v. GAF Corp., 757 F.Supp. 644, 645-46 (W.D.Pa.1990). This suggests to me that the alter ego determination involves elements of law as well as fact.
In any event, the treatment of two companies as alter egos is “an extraordinary remedy preserved for eases involving exceptional circumstances.” Village at Camelback Property Owners Ass’n, Inc. v. Carr, 371 Pa.Super. 452, 538 A.2d 528, 533 (1988), aff'd per curiam, 524 Pa. 330, 572 A.2d 1 (1990); see also First Realvest, Inc. v. Avery Builders, Inc., 410 Pa.Super. 572, 600 A.2d 601, 604 (1991) (characterizing the alter ego remedy as “extreme”); Connors v. Peles, 724 F.Supp. 1538, 1559 (W.D.Pa.1989) (“The decision of a court to pierce the corporate veil ... is to be exercised reluctantly and cautiously.”). A party attempting to negate the separate existence of a corporate entity has the burden of presenting “clear, direct, precise and believable evidence that the corporate veil should be pierced.” Iron Worker’s Sav. & Loan Ass’n v. IWS, Inc., 622 A.2d 367, 376 (1993); see also First Realvest, 600 A.2d at 604 (party failed to state sufficient facts to support alter ego theory); Carpenters Health, 727 F.2d at 284 (burden of proof rests on party attempting to pierce the corporate veil).
Pennsylvania law considers a variety of factors to determine whether one corporation is the alter ego of another. They include the ignoring of corporate formalities, gross un-dercapitalization, a lack of corporate records, non-functioning officers and directors, non-arms-length transactions between the corporations, and especially domination and day-to-day control sufficient to deprive the alter ego of its corporate identity. See Village at Camelback, 538 A.2d at 533; see also Carpenters Health, 727 F.2d at 284; United States v. Pisani, 646 F.2d 83, 88 (3d Cir.1981). Before concluding a corporation is the alter ego of another, the trial court must be able to conclude, based upon the record, *517 that justice or public policy-demands the use of such an extraordinary remedy, that the rights of innocent parties will not be prejudiced, and that the theory of the corporate entity will not be rendered useless. Lezzer Cash & Carry, 537 A.2d at 861 (quoting Ashley, 393 A.2d at 641). Absent -extraordinary or unusual circumstances, a court should recognize and maintain the separate corporate identity. First Realvest, 600 A.2d at 604; Reverse Vending Assoc. v. Tomra Systems US, Inc., 655 F.Supp. 1122, 1128 (E.D.Pa.1987).
In determining whether Tri-County was Mele’s alter ego, the district court expressly found that Tri-County consistently complied with all corporate formalities. Despite this finding, however, it then went on to conclude that the two corporations were alter egos. It found: (1) Tri-County only worked on Mele projects; (2) Tri-County was grossly under-capitalized; (3) Hartford treated Tri-County and Mele as one company; (4) Tri-County’s president, who was the daughter of Mele’s owner, lacked knowledge of the company’s business; (5) Mele assisted in hiring TriCounty employees; (6) Tri-County had never paid dividends; (7) Tri-County’s employees only contact with Tri-County- was its name on their paychecks; (8) the two companies’ employees were interchanged; and (9) Mele proposed to subordinate all of its debt to TriCounty in bankruptcy proceedings without Tri-County’s knowledge or authorization. Ragan v. Tri-County Excavating, Inc., No. 92-0066, slip op. at 4-7, 15, 1994 WL 67703 (E.D.Pa. March 2, 1994).
I believe the district court’s findings are insufficient to support an alter ego theory. Put simply, Local 542 failed to meet its threshold burden of showing that Mele “wholly ignored the separate status of [TriCounty] and so dominated and controlled its affairs that its separate existence was a1 mere sham.” Culbreth, 898 F.2d at 14. Nor did Local 542 show that Tri-County “acted robot- or puppet-like in mechanical response to [Mele’s] tugs on its strings or pressure on its buttons.” Id. at 15. In my opinion, the present circumstances are not so “exceptional” or “unusual” as to warrant extension of this extraordinary remedy to force Hartford to pay debts it did not agree to cover. See Village at Camelback, 538 A.2d at 533; First Realvest, 600 A.2d at 604; Lezzer Cash & Carry, 537 A.2d at 861.
I also believe the Court’s statement that “no finding of fraud or illegality is required before the corporate veil may be pierced, but rather, that the corporate entity may be disregarded ‘whenever it is necessary to avoid injustice,’” Majority Op. at 508 (quoting Rinck v. Rinck, 363 Pa.Super. 593, 526 A.2d 1221, 1223 (1987)), is an incorrect statement of Pennsylvania law. The Court in Culbreth did assume that Pennsylvania would pierce the corporate veil upon a showing of injustice but, nevertheless, concluded that a party had to make a threshold showing that the subordinate company was completely controlled and dominated or “acted robot- or puppet-like.” Culbreth, 898 F.2d at 14-15. I do not think Local 542 has so shown. Neither Rinck nor Culbreth involved an attempt to impose liability on a third-party through the third-party’s dealings with an alter ego. Though an “injustice” standard is more flexible than a standard of “fraud,” nevertheless, when the corporate veil is pierced under either standard, the knife is usually pointed at the shareholder who stands behind the veil, not those who contract with the shareholder’s alter ego.
In reaching its conclusion, I believe the district court was improperly induced to make Hartford a full participant in the activities of Mele and Tri-County by its fixation on the fact that Local 542 was attempting to recover money for pension and other benefit plans. During the hearing, for instance, the district court stated that “nothing is more sacred today in this country than a pension - plan because it’s been ignored by too many people and that’s important.” Appellant’s Appendix (“App.”) at 585. It also stated that “[t]o preclude recovery on their claim would have a serious impact on their pensions and health and other benefits.” Ragan, No. 92-0066, slip op. at 16, 1994 WL 67703. Though workers’ pension rights are important, I think the district court’s decision placed too much emphasis on the persons in whose behalf Local 542 sued. The pension problem *518 should have been left to ERISA, which we all agree does not apply here.[3]
In addition to finding exceptional circumstances where none exist, I believe the district court committed legal error by utilizing the alter ego theory to impose liability on an innocent third-party (Hartford). Ordinarily, courts apply the alter ego theory tó impose liability upon a shareholder who manipulates its so-called alter ego. These cases present issues of corporate governance. The district court, however, made no distinction between the issue of corporate governance and the issue of contract and surety law, which controls this case. Instead, it simply treated this matter as one involving the alter ego doctrine and then used that doctrine to change the text of a contract between Hartford and Mele. It allowed Local 542 to pierce the corporate veil and impose liability on Hartford, a third-party contracting with Mele in the ordinary course of its business as a surety, rather than on Mele, the manipulative corporate shareholder who is responsible for the injustice, if any, that may be present here.
. In doing so, it failed adequately to consider Pennsylvania’s general rule against piercing the corporate veil to the prejudice of innocent parties. See Ashley, 393 A.2d at 641; Lezzer Cash & Carry, 537 A.2d at 861. In Lezzer Cash & Carry, the Superior Court of Pennsylvania addressed a fact pattern similar to this one. It stated:
[T]here is no need to pierce the corporate veil in order to avoid injustice. As to the corporate enterprises of SGA [principal and general contractor] and Oreland [subcontractor], whatever their relationship may be, both Aetna [surety] and Lezzer [materialman] are not involved. On the contrary, both are innocent parties. Aetna issued a payment bond as requested by SGA and included therein terms which were satisfactory to SGA, the principal, and PHP, the obligee. Lezzer entered a contract to sell materials to Independence [sub-subcontractor]; with whom it had been doing business on prior occasions. It did so with knowledge of or the ability to learn the terms of the payment bond which had been issued by Aetna. As between Aetna and Lezzer, both innocent parties, there was no reason to pierce the corporate veils of SGA and Oreland in order to alter the terms of the bond which Aetna had agreed to write .to protect designated subcontractors and materialmen.
Lezzer Cash & Carry, 537 A.2d at 861.
In determining that Hartford was not innocent because' it “considered Mele and TriCounty as one company,” Ragan, No. 92-0066, slip op. at 12, 16, 1994 WL 67703, the district court relied upon Tri-County’s indemnity agreement, -an internal memorandum from Hartford that referred to TriCounty as part of Mele, and Hartford’s review of Tri-County’s financial statements. In my view, this is insufficient to support a finding that Hartford was not an innocent third-party. See James E. McFadden, Inc. v. Baltimore Contractors, Inc., 609 F.Supp. 1102 (E.D.Pa.1985) (inter-office memoranda largely irrelevant to alter ego issue); U.S. for Use and Benefit of Global Building Supply, Inc. v. WNH Ltd. Partnership, 995 F.2d 515 (4th Cir.1993) (name association insufficient to find one company is alter, ego of other). As with the surety in Lezzer Cash & Carry, Hartford issued a payment bond containing terms agreeable to Mele, not Local 542. The relationship between Mele and Tri-County does not deprive Hartford of its status as an innocent third-party.
In this respect, I recognize Pennsylvania’s tendency to look to federal cases interpreting the Miller Act as persuasive authority, and I have no quarrel with the principle that “sureties may be reached ‘where ordinary principles of corporate law permit the courts to disregard corporate forms.’ ” Majority Op. at 510 (quoting Global Building Supply, Inc., 995 F.2d at 519). However, in Pennsylvania, “ordinary principles of corporate law” seem to me to preclude use of alter ego doctrine to impose liability on innocent third-parties. See Ashley, 393 A.2d at 641; Lezzer Cash & Carry, 537 A.2d at 861. In particular, I do *519 not find persuasive those Miller Act eases that pre-date Ashley and Lezzer Cash & Carry. See Global Building Supply, 995 F.2d at 519 (describing pre-Raíesora cases as “arguably” more prove to excuse non-compliance with a bond’s notice provision than those that came after Bateson).
Additionally, I am unable to accept the Court’s conclusion that Hartford (as a third-party surety) can be compelled to pay because the party “in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests _” Majority Op. at 508 (quoting Ashley, 393 A.2d at 641). Such a general statement strikes me as obiter dictum. At best, it is a truism. At worst, if taken seriously, it would permit courts to ignore the fiction of separate corporate existence at will. That fiction is one of proven utility and, in my judgment, essential to the functioning of a modern free market industrial society.
Finally, I believe the, district court not only erred as a matter of law, but that its ultimate finding that Mele and Tri-County were alter egos is clearly erroneous. Put somewhat differently, viewing the record as a whole leads me to a “definite and firm conviction that a mistake has been committed.” Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (internal quote omitted).
Specifically, Tri-County followed all corporate formalities and maintained a legitimate set of corporate records. Although Mele may have participated in Tri-County’s management, there is no clear indication that John Mele or his corporation dominated and controlled Tri-County to such an extent that it was a facade or a sham. See McFadden, 609 F.Supp. at 1105 (mere participation in management is insufficient). Further, neither John Mele nor his corporation owned any stock in Tri-County; nor can the court attribute a financial interest to John Mele and the Mele corporation simply because his three daughters were Tri-County’s sole shareholders. Related family corporations often have common stockholders.
The fact the district court seemed to rely upon most strongly was the indemnity agreement Hartford demanded from Tri-County and the Mele family’s other corporations. The record indicates, though, that Tri-County and its owners reasonably thought they would benefit financially if Mele obtained bonding and performed the project. Thus, I conclude the indemnity agreement is insufficient to justify the conclusion that Tri-County was Mele’s alter ego.
The district court also relied on testimony that some of Tri-County’s employees were interviewed and hired at Mele’s offices. The record, however, also shows that these interviews were done by a Tri-County employee, who made the decision to hire. Moreover, the testimony to the effect that it was common knowledge that Tri-County and Mele were the same company can just as easily be taken as showing that Local 542 dealt with Tri-County with its eyes open. See Lezzer Cash & Carry, 537 A.2d at 861. The fact that a Tri-County employee attended a meeting with Hartford concerning the surety bond does not appear unusual to me as Hartford was asking Tri-County to indemnify it.
I recognize, of course, that Tri-County’s president’s responses to the district court could indicate that she lacked any detailed knowledge of Tri-County’s operations. The district court used these responses to conclude that the president was a mere figurehead. Many times, however, her answers merely indicated confusion over the nature of the question and the district court’s manner in asking it.
The district court believed that Tri-County’s ignorance of Mele’s proposal to subordinate Tri-County’s debt in its bankruptcy proceeding was significant. I fail to see how a “unilateral” offer by Mele to subordinate its debt to Tri-County, without Tri-County’s knowledge, is evidence of Tri-County’s participation in abuse of the corporate form warranting application of the alter ego doctrine.
The district court’s conclusion that TriCounty only worked on projects with Mele is not borne out by the record. The district court’s belief that Tri-County was grossly undercapitalized ignores the economic reality that it had -operated successfully for twenty-three years. So, too, Tri-County’s failure to *520 pay dividends strikes me as nothing unusual for family corporations whose owners are acquainted with our income tax laws.
On the other hand, the undisputed fact that there was no commingling of funds and Tri-County was not recently incorporated indicate, along with their observance of corporate formalities, that the separate corporate existence of Mele and Tri-County should not be ignored. Taking all these facts together, I am unable to conclude that Local 542 produced evidence that is clear, precise and convincing enough to warrant piercing the corporate veil.
Accordingly, I would reverse the district court’s judgment in all respects.

. I agree with the Court that Pennsylvania law, not ERISA, governs this case. I also concur with the Court's conclusion that Hartford could not be liable for counsel fees or liquidated damages.

. This statement, arguably dictum, can be read as standing for no more than the obvious proposition that eveiy legal conclusion must have factual support.

. The ERISA issues seem to have dropped out of the case when Tri-County conceded its liability for the pension payments due Local 542.