F.P. PEPKA; Beer Barrel, Inc.,
Ice Barrel, Inc., Appellants,

v.

James H. SCHANG; Robert Nicholson;
Margaret Soltis; National Grange
Mutual Insurance Company.

Superior Court of Pennsylvania.

Argued Sept. 25, 1997.

Filed Nov. 14, 1997.

Reargument Denied Jan. 26, 1998.

Peter M. Suwak, Washington, for appellants.

John Sieminski, Pittsburgh, for National Grange, appellee.

Before DEL SOLE, EAKIN and HESTER, JJ.

HESTER, Judge:

F.P. Pepka, Beer Barrel, Inc., and Ice Barrel, Inc., appeal the November 15, 1996 order disposing of this action. At issue is whether the trial court properly determined that the liability of appellee, National Grange Mutual Insurance Company, was limited to the amount of $1,000. As we concur with the trial court's conclusion, we affirm.

Appellants instituted this action on August 16, 1989, against James H. Schang, Robert Nicholson, Margaret Soltis, and National Grange Mutual Insurance Company ("National Grange"). Nicholson and Soltis were named defendants based solely upon their conduct as constables. National Grange is the surety company that issued Nicholson's constable bond.

The complaint contains the following allegations. Schang owns commercial real estate at 914 Main Street, Bentleyville, Washington County. Pepka and Schang entered a lease that had a term from May 15, 1979, to May 15, 1982, and Pepka was permitted to operate a beer distributorship on the premises. On January 10, 1983, the parties entered an addendum to the lease, which provided for a monthly rental of $400 and for a lease term renewal of month to month. On June 16, 1988, the parties entered a second addendum for an additional part of the building, for a term from May 1, 1988, to December 31, 1989. However, the additional section of the leased premises was occupied by Ice Barrel, Inc., which has the same address as Beer Barrel, Inc.

Pepka became in arrears in rent, and a judgment was entered against him in the amount of $3,762 on July 10, 1989, in favor of Schang for the rental arrearages plus costs. On July 24, 1989, Pepka went to the office of the district justice where the judgment had been entered in order to pay off the debt. An employee of the justice would not mark the judgment satisfied but told Pepka to contact Schang to make payment. On that same day, Pepka, acting on behalf of all the appellants, offered to pay the full amount of the judgment and an additional two months rent. Schang refused to accept that offer.

On July 25, 1989, Pepka was contacted by an attorney for Schang, and Pepka again offered to pay the full amount of judgment. The offer was refused. Several additional times the week of July 25, 1989, Pepka offered to pay Schang the judgment in full, but the offers were refused.

On either August 4, 1989, or August 7, 1989, Pepka informed Schang that the full amount of the judgment was in escrow at the office of appellants' attorney. Schang refused to accept the money.

Schang obtained an order for possession of 914 Main Street, and the order was issued to Constable Nicholson. On August 10, 1989, Constable Soltis, acting on behalf of Nicholson, appeared at 914 Main Street to take possession. On that day, Pepka tendered to Soltis and to Schang the full amount of the judgment, but the tender was refused.

Linda Zywan was on the premises after Schang and Soltis arrived, and was told by them that the law allowed them to seize and sell the contents of the premises even though no proceedings had been instituted to execute on the judgment. In the complaint, appellants then alleged:

Defendants, JAMES H. SCHANG and MARGARET SOLTIS, seized personal property in and about the premises of 914 Main Street, and either sold or removed all personal property on the premises without any lawful right to do so knowing that some of the property so seized and sold by Defendants was property of others and further knowing that all such property was under Sheriff's lien.

Complaint at ¶ 29. Appellants further alleged the following sale deprived them of due process of law at it was conduced in violation of the rules regarding execution of judgments, and Schang previously had told Pepka that he intended to take these actions.

The property allegedly seized on August 10, 1989, included $1,410.16 in beer, a cash register under levy with a value in excess of $3,292.88, other personal property under levy and scheduled for sale on September 6, 1989, ice making equipment under lease with a value in excess of $20,000, ice sales equipment and merchandisers also under levy with a value in excess of $25,000 and a pick-up truck. In the complaint, appellants pled causes of action in abuse of process and for the wrongful taking and injuring of personal property.

Schang and appellants then entered a stipulation and agreement, which provided as follows. Schang would restore appellants possession of 914 Main Street, restore the utilities to the premises, return various items taken from the premises, and extend the term of the lease until December 31, 1989. Further, Schang granted appellants an option to buy the property. Appellants agreed to pay $2,000 to Schang when the items were restored and an additional amount of $1,762 within two months. Appellants also agreed to settle and discontinue the case as to Schang. On August 29, 1989, the case was settled and discontinued as to Schang.

In the ensuing years, the following occurred. Appellants filed a notice of intent to take default judgment against the remaining three defendants based on their failure to answer the allegations of the complaint. However, default judgment was entered solely against Soltis. Soltis later petitioned to have the judgment opened. Nicholson and National Grange filed an answer and new matter. Appellants responded to the new matter.

Nicholson and National Grange then attempted to join Schang as an additional defendant. In response, Schang moved for both judgment on the pleadings and summary judgment. He alleged that the joinder was improper as the statute of limitations had expired on the underlying action against him at the time of his joinder and that joinder was improper because had been released from liability in the action by the appellants.

On February 27, 1995, Nicholson and National Grange moved to place the case on the trial list. Six months later, Nicholson moved for summary judgment. On November 6, 1995, the court entered a briefing schedule for resolution of all pending motions. Briefs were filed, and then Soltis petitioned to join the motions for summary judgment filed by Nicholson and National Grange.

On May 1, 1996, the court disposed of those motions. It opened the default judgment taken against Soltis and permitted her to join in the summary judgment motions filed by Nicholson and National Grange. It then denied the motions for summary judgment, which were premised upon immunity, filed by Soltis, Nicholson, and National

Grange. However, it expressly limited National Grange's liability in the action to the face amount of its bond, $1,000. The court also denied Schang's motion for summary judgment and allowed him to be joined as an additional defendant by the remaining three defendants.

National Grange then tendered a check in the amount of $1,000 to the Prothonotary of Washington County and asked to be released from the action. Further, counsel for National Grange, who had been representing Nicholson, petitioned to withdraw his appearance on behalf of Nicholson.

After proceeding relating to discovery and trial preparation, the parties entered a stipulation, settlement and release. That document reads in pertinent part:

There are two aspects to the resolution. The first is a cash payment from the defendants as follows: A payment of $24,700 from James Schang; a payment of $1,000 from Margaret Soltis; a payment of $1,000 from Constable Robert Nicholson.

Additionally, based on earlier court proceedings, National Grange Insurance has paid into Court $1,000 as the limit of their liability on the bond. Those funds will be released to the plaintiff's counsel by the Prothonotary.

Additionally, Mr. Schang will release and mark as satisfied a certain judgment against the plaintiff in the amount of $2,362.00 immediately.

The second aspect is a judgment in the amount of $100,000 will be entered in favor of the plaintiffs and against defendants Nicholson and Soltis in their official capacity only as constable and deputy, not in their individual capacity. There is an agreement between the parties that there will be no effort to execute on this judgment against the personal assets of any of the defendants, Soltis and Nicholson. It is contemplated that plaintiffs' counsel will make an effort under the law to ascertain whether or not it can be collected against municipalities and/or appropriate insurance or bonding companies who may or may not have responsibility for the elected constables.

It is the intention of the plaintiffs to fully release these individual parties, yet retain their option to execute under the judgment as to municipal parties and/or appropriate insurance or bonding companies only. Further, defendants fully release plaintiffs, F.P. Pepka, Beer Barrel Inc., and Ice Barrel, Inc., and corporate officers.

. As regards the execution in which plaintiffs will seek remedy for the judgment solely against the municipality, insurance or bonding company, it is agreed that this stipulation will be a full and final release from all potential claims that may arise out of this matter with the defendants Nicholson and Soltis, with the exception that it is specifically contemplated that the plaintiffs will seek execution of the judgment against municipal parties and/or appropriate insurance or bonding companies only.

Stipulation, Settlement and Release, 11/19/96, at 1–3. On December 19, 1996, appellants entered judgment in the amount of $100,000 against Nicholson and Soltis, solely in their official capacity. Appellants appealed from that judgment the same day.

■ The sole issue on appeal is whether the trial court properly determined that the liability of National Grange was limited to the face amount of its bond, $1,000. The law is clear that an obligation of a surety is limited to the terms of the agreement and cannot be extended by judicial construction. *Peter J. Mascaro Co. v. Milonas*, 401 Pa. 632, 166 A.2d 15 (1960); *Lezzer Cash & Carry, Inc. v. Aetna Insurance Co.*, 371 Pa.Super. 137, 537 A.2d 857, 861 (1988).

'· At the time of this incident, 13 P.S. § 9 required constables to carry a bond, as follows:

The bond to be given by a constable shall be in such sum not less than five hundred dollars, nor more than three thousand dollars, as the court shall direct, and shall be taken by the clerk of the court in the name of the commonwealth, with conditions for the just and faithful discharge by the said constable of the duties of his office; and such bond shall be held in trust for the use and benefit of all persons who may sustain injury from him in his official capacity by

reason of neglect of duty, and for like purposes and uses as sheriff's bonds are given and held.

As provided by this section, Nicholson secured a bond from National Grange, which provides:

Robert Nicholson shall and do well and truly serve and execute all writs and processes to him directed without delay and according to law: .... and at all times during his continuance in said office of Constable for the Borough of Centerville, 1st Ward aforesaid, well and faithfully execute the said office, and perform in all things the duty and trust in him reposed according to the law,....

Appellants first argue that 42 Pa.C.S. § 2942 should be applied retroactively to this case since the case was pending when the statute became law. 42 Pa.C.S. § 2942, enacted in June, 1994, requires a constable to obtain professional liability insurance in the amount of $250,000.

In response to this position, we initially observe that the statute cannot be construed to expand the contract entered between National Grange and Nicholson. If Nicholson violated that statute by failing to purchase liability insurance, Nicholson is the liable party, not National Grange.

■ However, we also decline to apply this 1994 statute to actions occurring in 1989. The law on retroactive application of a statute is clear. A legislative enactment will not be given retroactive effect unless the legislature clearly expresses that it will be given such effect. 1 Pa.C.S. § 1926; *Flick v. Flick*, 408 Pa.Super. 110, 596 A.2d 216 (1991). A law is given retroactive effect if it is used to impose new legal burdens on a past occurrence. While some statutes, if curative or procedural, will be applicable to litigation instituted prior to their enactment, a statute will not be applied to pending litigation if a vested right of contractual obligation is involved.

42 Pa.C.S. § 2942 (emphases added) provides, in relevant part:

(a) Certification. *After the establishment, implementation and administration of the Constables' Education and Training Program created under sections 2944* (relating to program established) and *2945* (relating to program contents), no constable or deputy constable shall perform any judicial duties nor demand or receive any fee, surcharge or mileage provided by this subchapter unless he has been certified under this subchapter.

(b) Liability insurance. Every constable and deputy constable must file with the clerk of courts proof that he has, currently in force, a policy or professional liability insurance covering each individual in the performance of his judicial duties with a minimum coverage of $250,000 per incident and a minimum aggregate of $500,000 per year. However, *no constable or deputy constable shall be required to file such proof until six months after the effective date of this act.* The Constables' Education and Training Board shall immediately investigate and implement the most cost-effective method of achieving liability insurance for constables and deputy constables under this subsection.

Thus, it is clear that the legislature did not intend that constables be required to procure professional liability insurance applicable to acts occurring prior to the act's effective date. Furthermore, a vested contractual obligation is involved since National Grange was paid a premium for a $1,000 bond, and appellants now seek to impose liability on it in the amount of $100,000.

■ Appellants also claim that they are entitled to recover from National Grange a sum exceeding the face amount of the bond under the reasoning of *New Holland Turnpike Co. v. Lancaster County*, 71 Pa. 442 (1872). In *New Holland Turnpike*, there was an agreement between the New Holland Turnpike Company and the commissioners of Lancaster County for the erection of a bridge over Conestoga Creek. Pursuant to the agreement, New Holland agreed to pay one-third of the costs of erecting the bridge. The construction of the bridge was estimated at $11,000. New Holland issued a $4,000 bond

to the commissioners of Lancaster County. The bond also stated that if New Holland paid its one-third share of expenses incurred in building and erecting the bridge, the obligation was to be void.

The cost of building and erecting the bridge was $16,500, rather than $11,000. In an action by the commissioners of Lancaster County to recover one-third of the price of constructing the bridge, the lower court entered a judgment against New Holland Turnpike in the amount of $5,500, or one-third of $16,500. The Pennsylvania Supreme Court affirmed this award, stating:

> [This] is not a mere bond in a penalty—on condition to be void upon the doing or not doing a collateral act, either by the obligor or a third party. Such is the usual case in official bonds with sureties, conditioned for the faithful performance of the duties of some office, or for accounting for money, or an ordinary private bond of indemnity by sureties. In such cases it may be conceded that the penalty of the bond is the limit of liability on the instrument itself.

The Court found that since New Holland had expressly agreed with the commissioners of Lancaster County to pay one-third of the costs of constructing the bridge and that those terms were expressly set forth in the language of the bond, the commissioner could recover in excess of the face amount of the bond.

The bond issued by National Grange was not of the type that was at issue in *New Holland Turnpike.* There is no express agreement between National Grange and appellants incorporated into the bond. The bond issued by National Grange was a mere bond "in a penalty," which could become void upon the doing or not doing a collateral act by Nicholson. Thus, the penalty of the bond is the limit of liability on the instrument itself.

As appellants' arguments are unfounded and as National Grange's liability in this action is limited to the face amount of the bond, the judgment is affirmed.

Judgment affirmed.